**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **LEE BURRELL,** | § | |
| *Plaintiff* | § | |
| | § | **Civil Action No.:** |
| **v.** | § | |
| | § | **CLASS ACTION** |
| | § | **Complaint for Accommodation** |
| **SECOND MAPLE AND MCKINNEY,** | § | **Discrimination Under the A.D.A.** |
| **L.P. and HERMITAGE** | § | |
| **INVESTMENTS, INC.,** | § | **JURY TRIAL** |
| *Defendants* | § | |

### ORIGINAL COMPLAINT, DEMAND FOR JURY TRIAL AND FOR CLASS ACTION

1.      Plaintiff, Lee Burrell, brings this action pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* the Texas Architectural Barrier Act[1] (the "TABA") and the TEX. HUM. RES. CODE § 121.001 *et seq.* (the "THRC").  This Complaint seeks redress for past and continuing discrimination against persons with disabilities and to bring the premises into compliance with Texas and Federal law including the ADAAG[2].   This discrimination is occurring at a public accommodation in Dallas, Texas that is a commercial property on McKinney Avenue that has a One Stop Food Store with a small Dickey's BBQ inside. Plaintiff brings this civil rights claim against the Defendants because Plaintiff and the members of the Proposed Class, by reason of their disability, are being excluded from participation in or being denied the benefits of the services, programs, or activities of and being subjected to discrimination by the Defendants at this property and its public accommodations.

---

[1] Texas Revised Civil Statutes, Article 9102 *et seq.,* (the "TABA"). The TABA is now codified in the Texas Government Code at chapter 469.

2.      Plaintiff seeks to enjoin the Defendants from maintaining and to require that the Defendants remove the architectural barriers that interfere with Plaintiff's and the Proposed Class' right to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at the property.

3.      Plaintiff also seeks a permanent injunction to prevent the Defendants from engaging in these unlawful practices, as well as declaratory relief, and damages for the violation of Plaintiff's civil rights and the civil rights of each of the members of the Proposed Class under Texas State law, along with attorney's fees and costs of litigation.

## JURISDICTION

4.      This Court has jurisdiction over the federal claims brought in this action under 28 U.S.C. §1331 and 42 U.S.C. §12188 and supplemental jurisdiction over any state claims pertaining to this discrimination under 28 U.S.C. §1367.

## PARTIES

5.      Plaintiff Lee Burrell is an individual with a disability within the meaning of the ADA Sec. 3(2)(A), 42 U.S.C. 12102(2)(A), and a "Person with a disability" as defined by TEX. HUM. RES. CODE § 121.002(4).  He is mobility impaired and uses a wheelchair for mobility.

6.      Defendant Second Maple and McKinney, L.P. is a Texas limited liability partnership doing business in Texas.   Defendant Second Maple and McKinney, L.P.  owns the real property in this case.   Second Maple and McKinney, L.P. lists its agent for service of process as Scott G. Damuth located at 2716 West Main Street, Gun Barrel City, Texas 75156.

7.      Defendant Hermitage Investments, Inc. is a Texas for profit corporation doing business in

---

[2] Federal ADA Guidelines for Buildings and Facilities, 28 C.F.R. Part 36, Appendix A, (the "ADAAG").

Texas and is the general partner of Second Maple and McKinney, L.P.  Hermitage Investments, Inc. lists its agent for service of process as a very similar person to the other agent.  Hermitage Investments, Inc. lists its agent for service of process as G. Scott Damuth located at 2716 West Main Street, Gun Barrel City, Texas 75156. Second Maple and McKinney, L.P. and Hermitage Investments, Inc. are collectively referred to herein going forward as "Defendant" or "Landlord".

8.      The Property is a commercial property located generally on McKinney Ave. in Dallas, Texas.  The Property is more particularly described in Dallas County records as HIGHLAND PARK LAND CO 1 BLK 4/541 LT 5A ACS 0.5445, and has a value of approximately $3.000,000.00. The Defendant purchased the Property approximately 20 years ago.

## BACKGROUND OF LEGAL CLAIMS

9.      More than 25 years ago Congress determined that disabled people, such as the Plaintiff and the Proposed Class, were suffering discrimination.  Specifically, Congress found *inter alia* the following:

> (a)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

> (b)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

> (c)     the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(d)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity."[3]

10.     As a result of these findings, the Congress passed the Americans with Disabilities Act (the "ADA"), 42 U.S.C. Sec. 12101 *et seq*.  That act forms the basis for this action.  The ADA was designed to do several things, specifically among other things:

(a)     to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(b)     to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(c)     to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(d)     to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."[4]

11.     In an effort to prevent discrimination against persons with disabilities, Texas passed the Texas Architectural Barrier Act[5] (the "TABA").  The intent of the TABA was to make all buildings and facilities covered by that article accessible to and functional for, persons with disabilities to, through, and within their doors.  The TABA states, "The provisions of this article are to further the policy of the State of Texas to encourage and promote the rehabilitation of persons with disabilities and to eliminate, insofar as possible, unnecessary barriers encountered

---

[3] 42 U.S.C. 12101(a) Only portions are set out in full so lettering does not match statute.

[4] 42 U.S.C. 12101(b).

[5] Tex. Civ. Stat. Art. 9102 Sec. 3(b). The TABA was later incorporated into the Tex Gov Code chapter 469.

by persons with disabilities, whose ability to engage in gainful occupations or to achieve maximum personal independence is needlessly restricted."[6]

12.    The Texas Accessibility Standards (the "TAS") adopted as a result of the TABA apply to "a privately funded building or facility defined as a 'public accommodation' by Section 301(7) of the Americans with Disabilities Act of 1990, and its subsequent amendments, that is constructed or renovated, modified, or altered on or after January 1, 1992."[7] (*emphasis added*)

13.    The Texas Human Resource Code (the "THRC") prohibits discrimination against disabled individuals to wit, "Persons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state." Tex Hum Res. Code 121.003 makes a failure to comply with Chapter 469 of the Government Code or to make reasonable accommodations in policies, practices and procedures an act of discrimination.

14.    So both Federal and State laws impose obligations on commercial property owners regarding the disabled.

15.    As a result of Plaintiff's disability, using many public accommodations is already difficult even when architectural barriers have been removed.  By failing to comply with the law and by owning or operating non-complying public accommodation, the Defendant continues the discriminatory effects that the laws sought to reform.

16.    Under the ADA, both the landlord who owns the building and the tenants who own or operate the places of public accommodation are liable for the violations of the ADA alleged

---

[6] Tex. Civ. Stat. Art. 9102 Sec. 1.

[7] Tex. Civ. Stat. Art. 9102 Sec. 2(a)(4).

herein.  As between those parties, allocation of responsibility for complying with the obligations of the ADA may be determined by lease or other contract.  36 C.F.R. 201 (b).

17.     Under Texas law the owner of the property is responsible for THRC damages that are conclusively presumed to have occurred when a violation of Chapter 469 has occurred or when an owner fails to make reasonable accommodations to its policies practices and procedures resulting in discrimination at a covered property.

18.     Congress provided that the primary enforcement mechanism for the ADA would be private citizens. The State of Texas provided that private citizens have the right to file suit in a court of competent jurisdiction to seek recovery for damages. Thus, private citizens have been given the right to file suit to enforce these civil rights laws to assure access to the public accommodations in Texas.  There are simply too many pieces of property for these government agencies to single handedly bring into compliance.

19.     The Property is completely under the control of the Defendant.  The Plaintiff and the members of the Proposed Class have no control of the Property or the fact that they are disabled. The existence and requirements of 25 year old laws can come as no surprise to any entity owning or operating commercial property.

<u>**PRE-SUIT NOTICE WAS ATTEMPTED**</u>

20.     <u>Pre-suit notice is **_not_** required under the statutes.</u>  Counsel for the Plaintiff did, however, provide such notice and an opportunity for Defendant to resolve this matter. A letter was sent via overnite to the landlord's agent for service and to the address on the tax role. The letter included a draft copy of this complaint.  The letter requested that the Defendant have its counsel contact Plaintiff's counsel if it wanted to try and resolve this matter outside formal litigation.  <u>No</u>

<u>response was ever received</u>.  As a result, this suit has been filed and the Defendant is free to assert whatever defenses it claims to have.

21.     At any time prior to receiving the letter and Complaint from the Plaintiff the Defendant could have modified the Property to come into compliance with the more than 25 year old laws and avoided this suit. But the Defendant did not. What the Defendant chose to do instead was to buy, own and operate Property in direct violation of Federal and Texas law and to thereby discriminate against the Plaintiff and the Proposed Class.

22.     Plaintiff and the Proposed Class, are now exercising their rights granted by Congress and the State of Texas, to enforce the laws to stop the discrimination and to enforce the statutory penalties for the discrimination the Defendant has caused.

### FACTS

23.     The Property is commercial property with a public accommodation, a convenience store/restaurant, located right on McKinney Ave. The Property has its own parking. There are public transportation stops located right on McKinney Ave and a trolley that runs in front of the Property as well.

24.     Plaintiff uses a wheelchair for mobility.  Mr. Burrell lives about 10 to 15 minutes from the Property. Mr. Burrell pulled in to the Property to get some BBQ. When he got out he attempted to use the bathroom to wash his hands.  The restroom is not accessible.  The sink is not accessible. The sink has no clearance for a person in a wheelchair to be able to get under the sink. The sink in the men's room at the Property is pictured below.



25.     When he went to leave, he found that there was not a sufficient amount of room on the pull side of the door to get out.  The door from the restroom is not compliant.  A picture of the doorway appears below.



26.     Mr. Burrell was discriminated against by the Defendant at the Property.

27.     The problems shown above are not the only barriers at the Property.  Despite being right

on McKinney with a Trolley running right in front of the Property, there is not an accessible

route from the sidewalk into the business on the Property.  A picture of the barriers that would be

encountered  by people entering the Property from the east are pictured below.



28.     The entrance from the sidewalk on the west side of the Property is not compliant as well.

A picture of the barriers encountered if entering the Property from the west are pictured below.



29.     The law requires and accessible route from the sidewalk to the front door of the business on the Property. The Property does not have an accessible route to the sidewalk.  ADAAG 4.3.2 Location.

> (1) At least one accessible route within the boundary of the site shall be provided from public transportation stops, accessible parking, and accessible passenger loading zones, and public streets or sidewalks to the accessible building entrance they serve. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public.

> (2) At least one accessible route shall connect accessible buildings, facilities, elements, and spaces that are on the same site.

30.     So what we have in this case is a 3 million dollar piece of Property with a convenience store and restaurant that doesn't have an accessible men's room or an accessible route from the front door to the sidewalk.  The Property was purchased 20 years ago. The building was constructed at the same basic time the Property was purchased by the Defendant.    The Property is new construction.   The plans for the construction of the Property were never inspected by TDLR. The Property was never inspected by TDLR for compliance after construction.

31.     Mr. Burrell, like any disabled person, has encountered these types of barriers countless times over the years.  The Property, like so many other properties in the DFW area, does not comply with the accessibility laws.  So long as Property like this fails to provide access, the law is thwarted.

32.     The law does not require that any plaintiff engage in a futile act to continue to try and patronize businesses so blatantly in violation of the laws designed to allow Mr. Burrell to access

and use the facility just like the able bodied, however, Mr. Burrell would like to be able to use the Property and would like to return to the Property when it is made compliant.

33.     The Defendant has owned and operated this Property without bothering to bring it into compliance that entire time. The undeniable reality is that more than 25 years after the ADA was passed this Property is operating with open and obvious barriers to the disabled public and nothing at all will be done about it until the Plaintiff has hired a lawyer and filed a lawsuit.

34.     After discovery when a full review has been conducted, a complete list of the barriers at the Property will be provided to the Defendant.  The listing in this Complaint is merely intended to provide the Defendant with information sufficient to conform to the notice pleading requirements and to show facts sufficient to prove liability.

35.     The types of architectural barriers that exist at the Property are precisely what the ADA and Texas laws were designed to eliminate.  The Plaintiff was discriminated against when he attempted to visit the Property when he encountered the architectural barriers at the Property. The Plaintiff would like to be able to visit the Property and would return to the Property if it were made compliant so that he could park and get in and use the business like an able bodied person can.

36.     The Plaintiff and members of the Proposed Class will encounter architectural barriers any time they attempt to visit the Property. The Defendant by failing to remove the architectural barriers discourages the Plaintiff and all members of the proposed class from attempting to use the Property and from enjoying the Property in the same way that the able bodied can.  By failing to remove the barriers the Defendant discriminates against the Plaintiff and the mobility impaired individuals who would like to visit the Property.

37.     As a result of the Defendant's conduct and in order to pursue this matter Plaintiff has retained counsel with more than 29 years of experience, including having been appointed class counsel on several occasions to represent mobility impaired individuals of Texas.  The Plaintiff has agreed to pay his attorney a reasonable fee.  Pursuant to his statutory rights, Plaintiff will seek to recover his fees and any costs in this litigation from the Defendant if he is the prevailing party in this case and if the Proposed Class is certified counsel will seek fees for their representation as well.

## NEED FOR CLASS CERTIFICTION

38.     ADA Title III cases and cases brought under the THRC are civil rights cases.  The discrimination, in general, is the existence of architectural barriers at the properties. The ADA and Texas laws were designed to eliminate those discriminatory barriers over time.  The laws require that new locations be designed and constructed in full compliance, and they require that all modifications to existing locations also be made in full compliance.[8]  The laws are structured so that over time, gradually, all properties will be or become compliant to the maximum extent feasible.

39.     It has now been more than 25 years since passage of those laws and compliance has simply not occurred as expected because new construction and modifications are regularly not made in compliance, owners have not voluntarily made readily achievable modifications as the law requires, and, so long as this situation exists and  so long as property is purchased and or operated without regard to compliance, compliance will never be achieved.  When non-compliant modifications are built into a property and when property is purchased without regard

to compliance a significant purpose of the law is thwarted because this <u>prevents</u> gradual compliance.

40.     For more than 17 years now counsel for the Plaintiff and the Proposed Class, has represented disabled individuals on ADA Title III barrier cases. During that time it has become abundantly clear that <u>individual</u> ADA Title III cases are considered nothing but a nuisance by the vast majority of commercial property owners.  The money damages available under state law to an individual seeking enforcement are only $300.00 for each violation.

41.     Thus the only "damages" an owner faces in an individual ADA case, above and beyond the costs to "fix", are the potential attorney's fees.  So property owners are just not concerned about getting caught out of compliance because there is no real consequence.  Even in the rare occasion where an owner is caught and sued, the downside amounts to nothing more than doing <u>what they should have already done years ago and possibly paying a "nuisance" attorney fee in addition to resolve the case</u>.[9]  In other words, it's just the cost of doing business if you're caught.

42.     As a result of this situation, commercial property owners have not been motivated over the past 25 years to come into compliance or to be sure whatever modifications they do make are made in compliance, or to make sure that when they buy property that it is compliant and/or that modifications are or <u>were made</u> in compliance.  A quick drive around the Metroplex to view the

---

[8] The ADA also imposes an affirmative obligation to make readily achievable modifications to the property.

[9] Further, the court is well aware that ADA Title III cases are regularly referred to as "drive by litigation" and the people bringing the cases along with their counsel are subtly smeared as somehow unscrupulous.  This situation tends to further decrease compliance. Additionally, this kind of "press" seriously dissuades disabled individuals from raising issues of discrimination lest they be cast as "litigious trouble makers".  This situation in turn prevents any real awareness of how widespread the noncompliance and discrimination still actually is.  Filing this as a class makes it clear that this case is serious and that the plaintiff and counsel stand ready to prove all of the allegations contained herein. As a class this case will vindicate the rights of the Proposed Class and will help to raise awareness regarding the problem the members of the Proposed Class face each day.

general state of compliance in older properties, newer properties, and in the modifications that have been made to both types of properties is enough to show any objective person that the laws are almost universally ignored, misunderstood, or given nothing but lip service. The objective state of compliance that exists, now 25 years later, is strong evidence that the purpose of both the federal and State laws has been substantially thwarted.

43.     The Property involved in this case is a perfect example. It is a typical piece of commercial property for the area. It has been owned by the same entity for approximately 20 years. The building on the Property was constructed brand new under the ADA and Texas Access laws, yet despite this, the Defendant fails to meet even the most basic requirements for a path through the facility and for providing an accessible restroom at the Property.

44.     Any attempt to come into compliance with the ADA begins with having the Property assessed. And any basic ADA inspection would turn up the existence of the types of barriers that have been shown in this Complaint. Any reasonable due diligence regarding ADA compliance would have found the problems. There open and obvious architectural barriers are violations of the requirements of ADAAG and the TAS[10].

45.     Either the Defendant has never bothered to have the Property inspected for compliance or the Defendant has ignored any findings of such an inspection. Either way, it is clear that the policies, practices and procedures of the Defendant have not been modified to try to avoid discrimination. Such a set of facts shows without a doubt that the Defendant has not modified its policy, practice and procedure to prevent discrimination at property it owns.

---

[10] The Texas Accessibility Standards.

*PLAINTIFF'S ORIGINAL COMPLAINT FOR CLASS ACTION AND DEMAND FOR JURY TRIAL*

46.     Further, when notified by letter from counsel of the issues at the location before this suit was filed, the Defendant did not even bother to have their lawyer call the Plaintiff's counsel. Nothing will change until suit is filed. It cannot be any clearer, there is no concern about being caught out of compliance.

47.     Filing this ADA Title III case as a class action instead of as an individual claim will provide anyone who has had their rights violated the opportunity to collect the state mandated $300.00 they are entitled to for each violation, it will provide certainty as to the remediation requirements so that there are not differing legal standards applied against the Defendant regarding what is "readily achievable", and, by having notice prominently placed at the property during the time for claims, this case will begin to raise awareness about the situation that exists and thereby, over time, help to eliminate it.

48.     This is hardly the only property in DFW, or even within a quarter mile of it, that is out of compliance.  It has been 25 years. Enough is enough. Property owners need to begin to see that a continued failure to voluntarily comply before being caught can result in consequences beyond the cost of an individual suit. Once this happens, property owners will begin to come into compliance voluntarily <u>before</u> being sued, they will make sure modifications are made in compliance, and they will be careful when purchasing property to be sure it is in compliance, <u>just as the laws intended</u>.

49.     For the foregoing reasons filing this ADA Title III case as a class action instead of as an individual claim will <u>ultimately</u> result in less overall litigation in the courts and greater overall access for the Proposed Class in the future.

50.     Therefore the Named Plaintiff now seeks to exercise the full panoply of rights and protections that the law provides by not only seeking broad injunctive relief that will benefit the Proposed Class, but by taking the additional and crucial step of providing for a method to notice and pay the Proposed Class members the conclusively presumed $300.00 nominal state law damages for each civil rights violation if they choose to make application.

51.     The Named Plaintiff does not seek a "class fund" and thus the counsel for the Proposed Class is not seeking to benefit from taking any portion of such a fund. The Proposed Class members will each receive 100% of the nominal state law damages.  It makes no monetary difference to the Named Plaintiff or the counsel for the Proposed Class whether 20, 50, 100 or 1000 people make claims. The purpose for the monetary damages portion of this case is to raise awareness through posting notice at the Property and on Social Media,  and to provide a way for the Proposed Class members, if they so choose, to collect what is a negative value damage award that state law says they are owed as a matter of law.  The nominal state law damages are a classic negative value claim and they are simply not sufficient to make it cost effective to file an individual claim for them, thus they cannot not be collected by unnamed members outside of a class.

### THE CLAIMS MADE IN THIS CASE SUPPORT CLASS CERTIFICATION

52.     In *Amchem Products v. Windsor,*[11] the United States Supreme Court confirmed the propriety of certifying a class, and held that the analysis should focus on "whether the proposed class has sufficient unity so that absent members can fairly be bound by decisions of class

---

[11] *Amchem Products v. Windsor*, 521 U.S. 591 (1997).

representatives."[12]  The Proposed Class in this case is a civil rights case seeking injunctive relief. The Supreme Court in *Wal-Mart Stores, Inc.*[13] more recently reiterated what it said in *Amchem* when it stated that, ""[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of what (b)(2) is meant to capture.""[14]    Courts have repeatedly held that a putative class of individuals with disabilities is sufficiently identifiable for purposes of satisfying preliminary requirements of class certification.[15]

53.    The Proposed Class seeks broad injunctive relief that is identical for each member. Further, the negative value monetary damages sought in this case are both identical and conclusively presumed to have occurred as to each member of the Proposed Class.  Thus, the prosecution of the liability issues in this case is almost identical whether it is done as a class or as an individual claim. Once the violation is shown for any one claimant, such as the class representative, then the damages flow directly to each claimant who cares to make a claim. As a result, there are no real "class complications" for trial and very limited issues for discovery.

54.    Because no class fund is being sought the *exact* size of the class of persons who would be eligible to make a claim for money damages does not need to be determined, nor could it ever be as in most civil rights cases.  All that has to be determined is that a class is proper under Fed. Rules Civ. P. 23. Whether an eligible member chooses to make application for the nominal state law damages is up to them.

---

[12] *Id.* At 613.

[13] Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).
[14] Id.
[15] *See, e.g., Colorado Cross Disability Coalition v. Taco Bell Corporation*, 184 F.R.D. 354 (D. Col. 1999); *Davoll v Webb,* 160 F.R.D. 142, 143 (D. Col. 1995).

55.     The size of the "proposed class members who would be eligible" is almost always one of the most contentious points in any class seeking payment to members because Class Counsel normally seeks to receive a portion of that amount and so the amount must be set in advance to be placed into a "fund" even though only a small portion of the eligible members in any class ever make claims.  But in this case, because Counsel is not seeking to benefit from a fund from which claims will be paid, there is no need for a fund at all.  All state law damage claims can simply be paid by the Defendant if, when, and as, proper application is made by someone to a claims fund manager.

56.     By declining to benefit from the creation of a "fund", the Proposed Class Counsel has streamlined the necessary analysis in this case and has eliminated the vast majority of issues for class litigation in this case.

57.     The injunctive relief benefits all members, and the "negative value" monetary damages are available equally to any Proposed Class member who cares to make a valid application. If a member of the Proposed Class does not care to make a monetary claim, then the Defendant is out nothing and the member still receives the benefit of the injunctive relief. It simply cannot be any fairer, or any clearer that this Proposed Class should be certified.

## <u>REQUIREMENTS OF RULE 23(A) ARE MET</u>

58.     Plaintiff seeks to maintain this action as a class action under Rule 23(b)(2), or alternatively, Rule 23 (b)(3) of the Federal Rules of Civil Procedure. The Proposed Class would consist of the following:

> all persons 18 years or older who have a mobility impairment such that they are considered disabled under the ADA and Texas law, and, who were discriminated by the architectural barriers at the Property and or by the Defendant' failure to modify its

polices, practices and procedures affecting the Property, and, who could bring a suit against the Defendant for accommodation discrimination at the Property under the ADA and or the THRC, and who do not claim any additional harm that might entitle them to greater than the minimum $300.00 nominal damages set by law for each violation. (hereinafter, the "Proposed Class").

### The Requirements of Rule 23(a).

59.    The prerequisites to class certification under Fed. R. Civ. P. 23(a) are (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[16]  A district court has substantial discretion in determining whether to certify a class and will be reversed on appeal only for an abuse of that discretion.[17]   However, "it is important to remember that Rule 23(a) must be read liberally in the context of civil rights suits."[18] The purpose behind this rule is to aid ''small individual claimants who would otherwise be reluctant to bring their claims due to the expense of the litigation."[19]   "Niggardliness in determining maintainability must be shunned, for unless class actions are hospitably received into our judicial system, many valid constitutional claims may be stymied."[20]

60.    Class actions brought pursuant to Title III of Americans with Disabilities Act are regularly found to satisfy the prerequisites for certification under Rule 23(a) and 23(b).[21] Further, the instant class action would serve the express purpose of the ADA, to wit, "a clear and

---

[16] *Amchem* at 613; *Mullen v. Treasure Chest Casino, L.L.C.,* 186 F.3d 620 (5th Cir. 1999).

[17] *Texaco v. Louisiana Land & Exploration Co.,* 995 F.2d 43, 44 (5th Cir. 1993).

[18] *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir. 1975).

[19] *Hawaii v. Standard Oil*, 405 U.S. 251, 266 (1972).

[20] *Diamond*, 519 F.2d at 1100.

[21] *See Neff v. Via Metro Transit Authority*, 179 F.R.D. 185, 196 (W.D. Tx. 1998); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 460 (N.D. Cal. 1994) (modified, 158 F.R.D. 439, 460) (N.D. Cal. 1994); *Berlowitz v. Nob Hill Masonic Management No. C-97-01241 M.H.P.,* 1996 U.S. Dist. LEXIS 25999 (N.D. Cal. December 6, 1996).

*PLAINTIFF'S ORIGINAL COMPLAINT FOR CLASS ACTION AND DEMAND FOR JURY TRIAL*

comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[22]  This Court should hold that the Proposed Class in this case is sufficiently identifiable and that all prerequisites for class certification have been satisfied.

### *There is Numerosity in the Proposed Class and Joinder of All Members is Impracticable.*

61.    Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable."[23] Although commonly referred to as a "numerosity" requirement, "Rule 23(a)(1) is an impracticability of joinder requirement, of which class size is an inherent consideration within the rationale of joinder concepts."[24] The court need not make specific findings as to the number of persons in the Proposed Class, but rather "may examine statistical data and then draw reasonable inferences from the facts in determining whether the numerosity requirement has been met.''[25]

62.    The 5th Circuit Court of Appeals has found that the numerosity requirement was met by a class with just 25 members[26], and it has held that a class range of 100 to 150 members generally satisfies the requirement.[27]  It is clear that there is no precise number.

63.    The Plaintiff must show "some evidence or reasonable estimate" of the number who are in the purported class.[28] The statistical data available in this case regarding the number of

---

[22] 42 U.S.C. §12101(b)(l).

[23] FED. R. CIV. P. 23(a)(1); *see Phillips v. Joint Legislative Comm. on Performance & Expenditure Review,* 637 F. 2d 1014,1022 (5th Cir. 1981).

[24] HERBERT B. NEWBERG AND ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 3.03, at 3-11 (3d ed.1992).
[25] *Pottinger V. Miami,* 720 F. Supp. 955 (S.D. Fla. 1989)(citing *Padron v. FeaVer,* 180 F.R.D. 448, 453 (S.D. Fla. 1998)(certifying class of persons denied supplemental security income benefits, and extrapolating from national statistics regarding the number of persons similarly situated).

[26]See *Zeidman v. J.Ray McDermott & Company, Inc*., 651 F.2[nd] 1030, (5th Cir. 1981).
[27] *Mullen v. Treasure Chest Casinos L.L.C*. 186 F.3d 620, 624, (5th Cir. 1999)
[28] *Zeidman v. J.Ray McDermott & Company, Inc*., 651 F.d 1030, 1058 (5th Cir. 1981).

mobility impaired individuals in the area of the Property is certainly sufficient to meet this standard.   The State of Texas Workforce Investment Counsel[29] completed a comprehensive evaluation of the number of disabled individuals residing in Texas in 2016 and the information is broken down by county.[30]   This Report shows that there are approximately 130,000 mobility impaired individuals living in Dallas County.[31]

64.   The 5th Circuit Court of Appeals has found that although the numerosity requirement would not be met by a class with 20 members, it was met by a class with 317 members,[32] and that a potential class of 580 individuals who had their property demolished without adequate notice satisfied the numerosity requirement.[33]

65.   If only 1% of the disabled individuals in Dallas County are affected, that is still more than sufficient to show numerosity. Further records show that Dallas County is approximately 900 square miles.   Therefore if the location draws only from 1.5 miles in each direction, that is 1% of Dallas County.   1.5 + 1.5 = 3.   3 miles north south and 3 miles east west is 3x3 or 9 square miles.   That is 1%.   It is not credible to argue that the Property does not draw people from at least that far away.   Clearly, numerosity is met in this case.

66.   The discrimination in this case has been occurring for many years. The vast majority of the people who have been discriminated against will never be found and the statute of limitations

---

[29]The Texas Workforce Investment Council ("The Council") was created in 1993 by the 73rd Texas Legislature. As an advisory body to the Governor and the Legislature, the Council assists with strategic planning for and evaluation of Texas' workforce system.

[30] *See* People with Disabilities: A Texas Profile. The Texas Workforce Investment Council 2016.   Link to pdf provided here:  *https://gov.texas.gov/uploads/files/organization/twic/Disabilities_Profile.pdf*

[31] Id.

[32] *Boykin v. Georgia-Pacific Corp.,* 706 F.2d 1384, 1386 (5th Cir. 1983).

[33] *James v. City of Dallas Texas*, 254 F.3d 551 (5th Cir. 2001).

on their state law claim for money damages has passed.  However, even beginning just 2 years

back from the date of filing of this case means that there are more than 104 weeks already in the

class time frame.  Even if just one or two mobility impaired persons a week visited the location,

the numerosity requirement would also be more than met. The Texas Workforce Data shows that

fully 5% of the population is mobility impaired.  It cannot be reasonably be argued that fewer

than fifty total people visit the Property each week. 5% of 50 is 2.5 people a week.  So again, it is

clear numerosity is met.

67.      Further, the analysis of numerosity in this circuit is not strictly defined by numbers – the

analysis includes other factors, among which are whether the proposed class members are

identifiable or knowable.[34]  In this case the members and future members are, for the most part,

simply not known or knowable as is the case in virtually every civil rights case.   This results

from the very nature of the Proposed Class, namely individuals who have been to the Property or

who will go before remediation is complete.[35]

68.      The Property contains a convenience store/restaurant and no identification is required to

enter.  Few if any records exist to identify the people who have gone and none of those will

include information to know whether the person was or is disabled.  Further, whatever number

who did go to the Property does not include the people who were discouraged from going

because of the architectural barriers, such as people who were discouraged from even trying to

---

[34] *See Penderson v. Louisiana State University*, 213 F.3rd 858 (5th Cir. 2000)(Plaintiffs showing of 5000 "potential" class members was significant factor in determining if joinder was practicable.)

[35] *Id.* at 213 F.3d at 868, n. 11.

go when they saw the paths of travel.[36]  Any potential class member who visited the Property would have immediately encountered some of the non compliant conditions shown in this Complaint.  Many may have simply left and told their friends not to bother going. For all of these reasons this Court should conclude that Fed. R. Civ. P. 23(a)(1)'s numerosity requirement has been satisfied.

## Commonality is met by the Proposed Class

69.     The questions of law and fact in this case between members of the Proposed Class are not just similar, they are identical. The claims made in this case are identical regardless of which disabled claimant brings them. The law sets the requirements for what is compliance and what is an architectural barrier, regardless of the level of disability. As a practical matter there is, therefore, no difference at all between trying the liability issues in an individual ADA Title III case or one brought as a class.

70.     Specifically, here are just some of the questions of law and fact common to the Proposed Class:

     (a)     Whether Defendant is in violation of the THRC.
     (b)     Whether Defendant has violated Tex Gov Code Chapter 469.
     (c)     Whether Defendant is in violation of the ADA.
     (d)     What barriers are readily achievable to remove.
     (e)     What modifications have been made to the Property.

## Typicality is met by the Proposed Class

---

[36] A Plaintiff is not required to engage in a futile act. (The Fifth Circuit appears to have endorsed this theory in *Frame v. City of Arlington,* 657 F.3d 215, 236 (5th Cir., 2011) (a Title II ADA case), *cert. denied,* 132 S.Ct. 1561, 182 L.Ed.2d 168 (2012), when it stated that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way.".)

71.     Plaintiff's claims are typical of the claims of the members of the Proposed Class.  The Plaintiff, like other members of the Proposed Class, has a mobility impairment and uses a wheelchair.  Plaintiff's impairment is, for the most part, equal to or worse than the impairments of the unnamed members of the Proposed Class.  And once again, the right to relief under the claims is identical for any disabled person. No Plaintiff has, nor could they ever have, a right to relief any different than any other plaintiff or member of the Proposed Class regardless of the level of their disability. Therefore this case presents an ideal situation for a class.

**Adequacy of Representation is met by the Named Plaintiff and Counsel**

72.     The named Plaintiff claims that the Defendant has violated the named Plaintiff's civil rights by, among other things, owning or operating a public accommodation that has architectural barriers in violation of the laws, new construction modifications that fail to comply with the ADAAG and TAS requirements, and/or by failing to have policies, practices, and procedures to prevent discrimination at the Property, and/or has failed to make readily achievable modifications.  These failures are a violation of his civil rights and those of all members of the Proposed Class.

73.     Plaintiff will fairly and adequately protect the interests of the Proposed Class.  Plaintiff has no conflict with the Proposed Class and in fact his interests are identical.  The Plaintiff is mobility impaired just as the other members of the Proposed Class. The injunctive and monetary relief the Plaintiff is entitled to is identical to the relief that any other member of the Proposed Class would be entitled to obtain regardless of the level of "impairment".  Plaintiff's interest is in getting compliance at the Property, assuring compliance in the community at large, raising awareness in the community for the discrimination that has occurred, and if this case goes

forward, in assuring that each member of the Proposed Class be allowed an opportunity to collect the monetary damages they are owed if they choose to do so.

74.     The Plaintiff has retained counsel with previous experience in class action litigation in precisely the same area within which this suit seeks recovery. Palmer Bailey is a lawyer with more than 29 years of litigation experience. He has represented numerous disabled individuals in individual lawsuits similar to this one for more than 17 years.  Further, Mr. Bailey has been approved in the Northern District as class counsel for disabled individuals on class action cases virtually identical to this one. Mr. Bailey is therefore particularly well suited to represent the Proposed Class.

## THIS CLASS IS PROPERLY CERTIFIED UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(b)(2)

75.     This action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because the Proposed Class seeks injunctive relief that is identical for all members.  Defendant' violations of the ADA are applicable to all members of the Proposed Class equally regardless of the level of disability, or the type of barrier encountered. Therefore the injunctive relief sought in this case is identical as to each member of the Proposed Class. Further, because the damages are nominal damages awarded for the vindication of a civil rights violation that flow directly from the violation they are "incidental" to the injunctive relief sought, and thus proper under the Supreme Court's most recent analysis in *Wal-Mart Stores, Inc. v. Dukes*.[37]

---

[37] Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).

76.     Because this is a civil rights case with no Class Fund being sought, and because the Proposed Class only seeks to represent individuals who do not have any additional harm beyond nominal damages, this case is as pure of an example of a "*Wal-Mart*" 23(b)2) with *incidental damages* flowing directly from the injunctive injury as could be posited.  Quite simply, IF a person is a member of the Proposed Class, THEN that person is entitled to receive an identical nominal monetary damage award set by law along with the injunctive relief that is identical for all Proposed Class members with no additional defenses or calculations to be made.

77.     The obligation of the Defendant to each member of the Proposed Class is identical and is set by statute. Once discrimination is proved as to one member, discrimination is proved equally as to all members. So clearly this class is appropriate.

78.     There are virtually no difficulties associated with operating this case as a class *per se* beyond the motion to certify it as such. Unlike the vast majority of class actions where damages are being sought for the Proposed Class members, because no Class Fund is being sought here, there is no need for any discovery to determine the exact size of the Proposed Class. The Proposed Class is described and proved under rule 23 and any member who chooses can make a claim. The claims are limited to those individuals who would have their own right to file suit to collect the damages.  The notice proposed will focus on providing notice at the Property itself and on social media associated with the Class and the Property. Thereby assuring the best possible notice, and, that the notice is directed at those who actually go to the Property.

79.      Because there is no need for significant litigation about the exact size of the Proposed Class or "the fund" because no fund is sought, the case will not require any discovery to determine exactly how many people are eligible to be a class member.  The determination of

whether or not someone meets the qualifications to be in the class in order to receive monetary damages will be made if, when and as someone makes a claim. At that time all that it will be necessary to determine is whether the person is mobility impaired, and whether they went to the Property. Neither determination requires any extraneous legal defenses or complex calculations. Basic medical proof, and a signature under oath by the claimant attesting to his having been to the Property will give rise to a valid claim. If the Defendant cares to challenge that, it can do so at that time through the claims process.

80.     Regardless, every member of the class of mobility impaired individuals will received the benefit of the injunctive relief sought. And quite frankly, the case will be conducted on the liability issues in an identical fashion to an individual Title III, THRC claim.    This case is therefore an ideal candidate for class certification.

## ALTERNATIVELY THIS CLASS IS PROPERLY CERTIFIED UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(b)(3)

81.     This action may also be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is a superior method for the fair and efficient adjudication of the controversy.

82.     The injunctive relief that is available in this case is identical for each member regardless of the level of their disability. No person could ever require any greater or lesser "compliance" than any other member. Differences between individual plaintiffs or claimants level of disability or experience at the Property does not change what the Defendant must do in order to comply if

the barrier is discriminating.  Further, the action necessary to bring suit is identical for every Proposed Class member. The facts and the law do not just predominate between the Proposed Class members, the facts and law necessary to prosecute this case are identical between the Proposed Class members.

83.    There is no conflict between any class representative or any individual member of the Proposed Class.  To the extent that any individual sought to "control the class" there would still be no difference in how the case *even could be* conducted, because the individual cannot make the Defendant do or not do anything that any other claimant can.

84.    There is no other litigation pending against the Defendant on this issue and none is expected. And again, if there was any filed it would not be capable of obtaining any better or different relief than the present case and in all likelihood would be abated by the court pending the outcome of this matter.

85.    A class action is a superior method to resolve this claim. This class is needed in order to concentrate the negative value state law damage claims to obtain relief for the Proposed Class that they otherwise would not be able to obtain.  Without a class the individual members of the Proposed Class have no way to ever collect the damages they have incurred that are set by statute. The state law claims are only $300.00 per person for each violation. It is not economically feasible to bring a single claim for that amount outside a claim to obtain the injunctive relief or as a class. Even if it were, it would flood the court with basically identical claims.

86.    Further, counsel for the Proposed Class is prevented by barratry laws from informing any other potentially harmed plaintiffs outside of class litigation.  Thus the only way the members of

the Proposed Class can find out about, or get an opportunity to collect their damages is through the notice that will be provided in this class action. Without a class, each of the individuals in the Proposed Class will never even learn about, let alone be given the opportunity to collect, the nominal damages the State of Texas has determined they are owed, should they choose to collect them.

87.     Further, it has become clear that even 25 years after this law was passed that it is not taken seriously for the reasons previously set out. A class action will send the clear message that the law is serious and thus raise awareness of the discrimination that is occurring all over DFW.

88.     Finally, one of the purposes of a class is to obtain finality on an issue so that a Defendant is not subject to varying standards and requirements. The determination of whether a barrier or condition is compliant is precisely the kind of issue that class actions are designed to resolve so that the Defendant will not face multiple differing standards with which to come into compliance.

## CAUSES OF ACTION
### Count 1
### ADA - Improper New Construction and or Alterations

The ADA in section 12183 defines a form of discrimination under section 12182 as:

> (1) a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter; and
> (2) with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to

the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Where the entity is undertaking an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

89.     Additionally, 36 C.F.R. 406 provides that, "(a) New construction and alterations subject to this part shall comply with the standards for accessible design published as appendix A to this part (ADAAG)." (emphasis added) As such the law requires that both new construction and alterations be built in compliance with the ADAAG new construction standards.

90.     The building and facility is new construction under the law. Clearly access into the Property "affects or could affect the usability of the building or facility or any part thereof." The "accessible" route into the business and the restrooms must be accessible.  As shown in the facts section they are not. There is not an accessible route from the front door to the sidewalk at the Property. There is not an accessible men's room at the Property. It matters not whether the Property had the modification when the Defendant purchased the Property, or whether the Defendant had the Property constructed with the barriers, the Defendant is responsible for owning and operating a public accommodation with non compliant new construction conditions.

91.     Further, neither a Plaintiff nor its counsel is free to do a full inspection of a property before filing suit.  The items set out in this Complaint show barriers that are clear violations and are clearly new construction. The pleading contained herein is made simply to put the Defendant on notice as required under the rules as to open and obvious modifications which do not comply.

92.     When a piece of commercial property still does not even have proper access to the front door, or an accessible restroom, it is clear that the law is simply ignored. If the law does not require an accessible route and restroom at a 3 million dollar piece of new construction after 25 years, then it is difficult to see what access the law does require be provided.

93.     The Defendant discriminates against Plaintiff and the Proposed Class on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, the Defendant does not afford to Plaintiff or any member of the Proposed Class the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because it owns and operates a facility and public accommodation where there are alterations or modifications made after January 26, 1992 that are not accessible to the maximum extent feasible and or where the public accommodation was designed and constructed entirely after January 26, 1992 but does not meet the new construction requirements.

94.     As a direct and proximate result of the Defendant owning a public accommodation that has modifications that have not been made in compliance with the law the Defendant has discriminated against the Plaintiff and the Proposed Class.

**Count 2**
**Failure to Implement Policies, Practices and Procedures to**
**Prevent Discrimination under the ADA**

95.     The Property is new construction and has several open and obvious architectural barriers including those listed in the facts section of this Complaint.  Any attempt to do the most basic due diligence regarding ADA compliance would discover the barriers.  Further, buying, owning and operating a piece of Property with a noncompliant accessible route through the Property is

clear evidence that there is no policy, practice and procedure in place to avoid discrimination at the Property.

96.     One form of discrimination defined by the ADA in 42 U.S.C. §12182(a)(ii) is,

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

97.     Either the Defendant did not do any due diligence to find out if the Property was compliant before having it built or after it was constructed, or it purchased it without doing such due diligence, or it has ignored the findings of any such due diligence.  Either the Defendant has policies and procedures in place to be sure the property it owns and operates is compliant or it does not. If it has policies, practices and procedures, then those policies discriminate against the disabled because the barriers demonstrated in this case are open and obvious.

98.     The Defendant discriminates against Plaintiff and the Proposed Class on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, the Defendant does not afford to Plaintiff or any member of the Proposed Class the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because the Defendant failed to make reasonable modifications to its policies, practices and procedures to afford such goods, services, facilities, privileges, advantages, or accommodations it offers to individuals with disabilities.

99.     As a direct and proximate result of the Defendant's failure to modify its policies practices and procedures the Defendant has discriminated against the Plaintiff and the Proposed Class.

**Count 3**
**TEX. HUM. RES. CODE – Discrimination under 121.003 (d)(1) for**
**Violation of Texas Government Code Subchapters A and B**

100.    TEX. HUM. RES. CODE § 121.003(a) provides that persons who are physically disabled have the same right as the able-bodied to the full use and enjoyment of any public facility in the state.

101.    TEX. GOVT. CODE § 469.003 (Vernon 2003) defines one set of public facilities covered by the law, specifically, "a privately funded building or facility defined as a "public accommodation" by Section 301(7) of the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments, that is constructed or renovated, modified, or altered on or after January 1, 1992" (emphasis added). As has been shown, the Property was either built brand new or modified after 1993 and is therefore covered under Texas law.

102.    The State of Texas, Texas Accessibility Standards (the "TAS") of the Architectural Barriers Act, Article 9102, Texas Civil Statutes, are similar to and closely track the ADAAG. Article 9102 was simply codified into Chapter 469 of the Government Code in 2003.

103.    The TAS clearly sets out certain requirements for public accommodations such as the Property with regards to design requirements. The TAS are the state equivalent to the ADAAG.

104.    TEX. HUM. RES. CODE § 121.003(d)(1) defines one form of discrimination as a failure to comply with Chapter 469 of the Government Code. Owning covered property where modifications have been made or it was built new and fails to comply with TAS is a violation of Chapter 469 and therefore a violation of 121.003. The Property was built new or modified as set

out in the facts section of this Complaint.  The accessible route through the facility and to the sidewalk is not compliant with the ADA or Texas law. The restroom is not compliant. The known barriers demonstrate violations of the TABA or Chapter 469 of the Government Code. Under the law, the owner of the Property is responsible for those violations. The Property is covered.  A violation of 121.003(d)(1) has  been shown.

105.    TEX. HUM. RES. CODE § 121.004(b) states that any violation of 121.003 is <u>deemed to have deprived</u> a person with a disability of his or her civil liberties. The person with a disability so deprived of his or her civil liberties is then given the right to maintain a cause of action for damages in any court of competent jurisdiction, and there is a <u>conclusive presumption of damages in the amount of no less than $300 deemed in favor of the plaintiff for that violation</u>.

106.    The Defendant's failure to comply with Chapter 469 of the Gov Code by owning covered property that was constructed as new but does not comply with the new construction requirements  or where modifications have been made but the modifications were not made in compliance with the Texas Accessibility Standards when such compliance was required is deemed to be a violation of Texas law 121.003(d)(1) and Defendant is conclusively presumed to have damaged the Plaintiff and every member of the Proposed Class in the amount of no less than $300.00 for this violation.

**Count 5**
**TEX. HUM. RES. CODE – Discrimination under 121.003 (d)(2)**

107.    TEX. HUM. RES. CODE § 121.003(a) provides that persons who are physically disabled have the same right as the able-bodied to the full use and enjoyment of any public facility in the state.

108.    TEX. GOVT. CODE § 469.003 (Vernon 2003) defines one set of public facilities covered by the law, specifically, "a privately funded building or facility defined as a "public accommodation" by Section 301(7) of the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments, that is <u>constructed or renovated, modified, or altered on or after January 1, 1992</u>" (emphasis added). The Property has been modified after 1993 and is therefore covered under Texas law.

109.    TEX. HUM. RES. CODE § 121.003(d)(2) defines one form of discrimination to be a <u>failure to make reasonable modifications to policies, practices and procedures</u>.  This provision basically tracts the violation set out in the previous section regarding the ADA failure to maintain policies practices and procedure. The pertinent portions of that pleading section are fully incorporated herein.

110.    The Defendant's conduct in buying, owning and operating a property which has open and obvious violations such as a non compliant parking and no accessible route through the facility demonstrates a failure to make reasonable accommodation in its policies, practices and procedures to prevent discrimination at the Property and that failure is a violation of section 121.003(d)(2).

111.    The Defendant's failure make reasonable accommodations to its policies, practices and procedures that results in discrimination is a violation of 121.003(d)(2) against the Plaintiff and each member of the Proposed Class.

112.    TEX. HUM. RES. CODE § 121.004(b) states that any violation of 121.003 is <u>deemed to have deprived</u> a person with a disability of his or her civil liberties. The person with a disability so deprived of his or her civil liberties is then given the right to maintain a cause of action for damages in any court of competent jurisdiction, and there is a <u>conclusive presumption of damages in the amount of no less than $300 deemed in favor of the plaintiff for that violation</u>.

113.    Thus the Defendant's failure to make reasonable accommodation to its policies, practices and procedures is deemed to be a violation of Texas law 121.003(d)(2) and Defendant is conclusively presumed to have damaged the Plaintiff and every member of the Proposed Class in the amount of no less than $300.00 for this violation.

## REQUEST FOR RELIEF

*Wherefore* Plaintiff respectfully requests that the Court grant the following relief:

114.    An order directing Defendant to bring any modifications that are new construction at the Property into full compliance with both Federal and State law.

115.    An order to remove the architectural barriers that are readily achievable to remove.

116.    An entry of money judgment against the Defendant, awarding Plaintiff the statutory minimum damages of three hundred ($300) dollars for the violation of his civil rights under TEX. HUM. RES. CODE § 121.003(d)(1), and for three hundred dollars ($300) for the violation of his civil rights under TEX. HUM. RES. CODE § 121.003(d)(2), and for such further amount for his

time and expense in the prosecution of this cause as a named plaintiff as shown by the evidence at trial should he be named as Class Plaintiff.

117.   An award to each member of the Proposed Class who makes proper application for the statutory minimum damages provided for the violation of their civil rights under TEX. HUM. RES. CODE § 121.003(d)(1) and for three hundred  ($300) dollars for the violation of their civil rights under TEX. HUM. RES. CODE § 121.003(d)(2), by the Defendant.

118.   An award to Plaintiff and the Proposed Class for attorney's fees, including litigation expenses, and costs.

119.   An award to Plaintiff and to members of the Proposed Class for all other relief at law and in equity for which the Court deems appropriate.


Respectfully submitted _____, 2018, by,


/s/ Palmer D. Bailey
Mr. Palmer D. Bailey
Bar Card No. 01533400
Law Office of Palmer Bailey
1400 Preston Road, Suite 400
Plano, TX 75093
Tel.  972.560.4095
Fax. 972.560.4096
pdbaileyesq@gmail.com
**Attorney for Plaintiff and the Proposed Class**


***Plaintiff and the Proposed Class demand a trial by jury.***